UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PAUL S.,

    **Plaintiff,**

v.                                                                                                                          Case No. 24-CV-1383

**FRANK BISIGNANO,**
**Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Paul S. (hereinafter "Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying in part his Title II application for a period of disability and disability insurance benefits and his Title XVI application for supplemental security income. For the reasons explained below, the Commissioner's decision is affirmed, and the case is dismissed.

## BACKGROUND

On December 29, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income. (Tr. 15.) In both applications, Plaintiff alleged disability beginning on April 1, 2019, due to a herniated disc, problems with the back and neck, heart problems, high cholesterol, and anemia. (Tr. 264.) Plaintiff's date last insured is December 31, 2023. (Tr. 18.) Plaintiff's claims were denied initially on September 10, 2021, and January 15, 2021, respectively, and upon reconsideration on May 30, 2023. (Tr. 15.) Plaintiff filed a request for a hearing, and a telephone hearing was held before Administrative Law Judge ("ALJ") Margaret J. O'Grady

1

on March 7, 2024. (*Id.*) Plaintiff, represented by counsel, testified, as did Thomas Heiman, a vocational expert ("VE"). (*Id.*)

ALJ O'Grady issued a partially favorable decision on May 9, 2024, finding Plaintiff disabled beginning on August 14, 2023, through the date of the decision. (Tr. 24.) However, the ALJ rejected Plaintiff's claim of disability from the alleged onset date of April 1, 2019 through August 13, 2023. (*Id.*) ALJ O'Grady found that since the alleged onset date, Plaintiff had the severe impairments of cervical and lumbar stenosis and spondylosis with radiculopathy, coronary artery disease, atrial fibrillation, and hypertension. (Tr. 18.) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 19.) The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations: he can occasionally climb ramps and stairs, stoop, crouch, kneel, crawl, and balance; he is unable to climb ropes, ladders, and scaffolds; and he is unable to work at unprotected heights and with hazards and dangerous machinery. (Tr. 19–22.)

While ALJ O'Grady determined that Plaintiff could not perform his past relevant work as a carpenter, she found that given his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. (Tr. 22–23.) Accordingly, the ALJ found that Plaintiff was not disabled from his alleged onset date of April 1, 2019, through August 13, 2023. (Tr. 24.) ALJ O'Grady's decision denying Plaintiff's claims became final when the Appeals Council denied his request for review. (Tr. 1–3.) Plaintiff now seeks review of ALJ O'Grady's finding of non-disability from his alleged onset date through August 13, 2023.

## DISCUSSION

1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the *ALJ. Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

2. *Application to this Case*

Plaintiff argues ALJ O'Grady erred in two ways in rendering her decision. First, he argues that the ALJ improperly evaluated the opinions of two of his treating providers—spine

surgeon Dr. Derek Orton and physical therapist Matthew Ferlindes. Second, he argues the ALJ failed to properly develop the record. I will address each argument in turn.

### 2.1 Evaluation of Treating Providers' Opinions

Plaintiff challenges the weight given to two of his treating providers, Dr. Orton, a spine surgeon, and Ferlindes, a physical therapist.

An ALJ must consider all medical opinions in the record regardless of their source; however, the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions, including those from the claimant's medical sources. 20 C.F.R. § 404.1520c(a).[1] The ALJ must consider an opinion's persuasiveness based on a number of factors, including supportability, consistency, examining relationship, the provider's specialization, and other relevant factors. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors. *Id.* § 404.1520c(b)(2).

#### 2.1.1 Dr. Orton

Plaintiff treated with spine surgeon Dr. Orton from September 6, 2019, until March 5, 2021, for pain in the upper, mid, and lower back, as well as for numbness and tingling in the lower extremities. (Tr. 3058.) Dr. Orton concluded Plaintiff suffered from degenerative disc disease with stenosis at C5-6 and C6-7; mid-thoracic spondylosis; discogenic low back pain at L4-5 and L5-S1; a right L4-5 facet joint cyst; and right L4-5 lateral recess stenosis with radiculopathy. (Tr. 3061.) After treating Plaintiff twice more in December 2020 and March 2021 (Tr. 2241, 2178), Dr. Orton concluded on March 5, 2021, that Plaintiff's symptoms were consistent with the radiographic findings that he has axial spine pain related to multilevel

---

[1] As the regulations governing the evaluation of disability for disability insurance benefits and SSI are nearly identical, I will generally refer to the regulations for disability insurance benefits found at 20 C.F.R. § 404.1520, *et seq.* for ease of reference.

spondylosis. (Tr. 2182.) Dr. Orton discussed with Plaintiff the "unpredictable" nature of performing fusion surgery for axial neck and/or low back pain. (*Id.*) He concluded that Plaintiff "has sustained permanent partial disability to the cervical and lumbar regions. He is at a plateau for maximal medical improvement. I recommend permanent activity and work restrictions. There is currently no role for surgical intervention." (*Id.*) Dr. Orton recommended Plaintiff consider additional spinal injections, additional physical therapy, acupuncture, and chiropractic care and instructed Plaintiff to return "as necessary" if symptoms persisted or worsened. (*Id.*)

On July 3, 2023, Dr. Orton completed a checkbox-type physical impairment questionnaire on Plaintiff's behalf, in which he opined that Plaintiff was capable of sitting for only 20 minutes at one time and for two hours total in an eight-hour workday; standing or walking for only 20 minutes at one time and for two hours total in a workday; occasionally lifting and carrying 20 pounds; and never lifting more than 50 pounds. (Tr. 4023–24.) He opined Plaintiff would need to take unscheduled breaks every one to two hours for five to 20 minutes and would miss work more than four times per month due to his impairments. (*Id.*)

ALJ O'Grady considered Dr. Orton's opinion and found it unpersuasive. (Tr. 22.) She concluded that Dr. Orton's "extreme limitations" were inconsistent with Plaintiff's reported activities throughout the record (such as putting in floors and going salmon fishing for nine days in July 2020 and chopping wood and painting a house in November 2020), as well as Plaintiff's lack of treatment for several years. (Tr. 21–22.) The ALJ noted that when Dr. Orton completed the form in July 2023, he had not treated Plaintiff since 2021; thus, his opinions were "limited in their usefulness." (Tr. 22.)

Plaintiff argues the ALJ failed to properly evaluate Dr. Orton's opinion by not evaluating the opinion's supportability by the medical evidence of record, by improperly relying on Plaintiff's stated activities to discount the opinion, and by failing to consider that Dr. Orton concluded Plaintiff's progress had plateaued in March 2021 as the explanation for his lack of treatment between March 2021 and the July 2023 opinion. (Docket # 14 at 11–13.)

I disagree that the ALJ erred in weighing Dr. Orton's opinion. As to the medical evidence, ALJ O'Grady acknowledges that the record demonstrates Plaintiff's history of neck and back pain that worsened in spring 2019 after lifting heavy panels at work. (Tr. 20.) She cited to Plaintiff's abnormal imaging showing severe degenerative disc disease with moderate bilateral foraminal stenosis at C5-6 and C6-7, midthoracic spondylosis with degenerative disc disease, significant disc disease at L4-5 and L5-S1 with severe L5-S1 disc space collapse, and right-sided facet joint cyst that contributed to severe lateral recess stenosis at L4-5. (*Id.*) While Plaintiff argues the ALJ failed to account for the abnormalities Dr. Orton found upon physical examination of Plaintiff, such as reduced range of motion in the lumbar and cervical spine and moderate tenderness in the bilateral lumbar paraspinal areas (Docket # 14 at 12), ALJ O'Grady explained that the RFC limitation to light work with additional postural and environmental restrictions accounts for Plaintiff's spinal abnormalities and pain (Tr. 21).

Plaintiff further argues that ALJ O'Grady improperly found his stated activities inconsistent with Dr. Orton's opinion. (Docket # 14 at 12.) Plaintiff states the ALJ ignored evidence that showed he had difficulties completing his daily activities, such as needing to rest after working around the house for two hours or becoming short of breath after pulling tape off from around his windows while painting. (*Id.*) He further asserts that his ability to

6

Case 2:24-cv-01383-NJ   Filed 12/08/25   Page 6 of 13   Document 21

perform housework for two hours before needing to rest is actually consistent with Dr. Orton's opinion that Plaintiff could only stand or walk for two hours total in an eight-hour workday. (*Id.*)

Once again, I find the ALJ did not err in this regard. ALJ O'Grady notes that despite ongoing flares of back pain, Plaintiff continued to report engaging in "significant levels of activity." (Tr. 20.) She cites to his statement of November 27, 2019, that he was doing "fairly constant bending" the prior day; his December 20, 2019, statement of low back soreness after doing a lot of bending and plumbing work; his July 2020 report of putting in floors and salmon fishing for nine days on Lake Michigan; his reports of going up on his roof to fill some tar holes; and his November 2020 reports of chopping wood and painting a house. (Tr. 20–21.) The ALJ then explains that these references to "heavy exertional activities" are inconsistent with disabling pain. (Tr. 21.) This is a reasonable conclusion.

Furthermore, while Plaintiff is correct that he reported to his physical therapist in July 2020 that he needed to "rest a while" after working around the house for two hours (Tr. 4061) and in November 2020, reported to his cardiologist that he became short of breath while painting around his house (Tr. 405), this does not undermine the ALJ's reliance on Plaintiff's activities to discount Dr. Orton's opinion. Needing to "rest a while" after working for two hours is not necessarily consistent with a capability of standing or walking for only two hours total in an eight-hour workday, as Plaintiff contends. It is unclear how long he needed to rest after performing the two hours of work. And while Plaintiff reported feeling short of breath while painting, in that very same record, he also reported chopping wood without any difficulty several days prior. (Tr. 405.) The ALJ's finding that these types of activities are inconsistent with claims of disabling symptoms is logical and well-supported.

7

Finally, Plaintiff argues the ALJ erred in discounting Dr. Orton's opinion due to Plaintiff's lack of treatment after 2021. (Docket # 14 at 13.) Plaintiff asserts that his lack of treatment is explained by Dr. Orton's finding in March 2021 that he reached a plateau for maximum medical improvement and there was no role for surgical intervention. (Tr. 2182.) While Dr. Orton did not recommend surgery, he did recommend injections, physical therapy, acupuncture, and chiropractic care to address his pain and instructed him to return "as needed" if his symptoms persisted or worsened. But Plaintiff testified that he had not treated for his back since 2021; rather, he had an appointment with a new spine doctor in March 2024. (Tr. 52.) Given Dr. Orton's instruction to return if symptoms worsened, it was not unreasonable for the ALJ to find Plaintiff's lack of treatment inconsistent with disabling symptoms. The fact Plaintiff's progress plateaued does not mean he is unable to perform work consistent with the stated RFC. Thus, I find the ALJ did not err in evaluating Dr. Orton's opinion.

### 2.1.2 Physical Therapist Ferlindes

Plaintiff treated with physical therapist Ferlindes in November and December 2019, and again in May through August 2020. During Plaintiff's initial evaluation on November 18, 2019, Ferlindes noted that Plaintiff's back pain was "set off" after lifting some heavy panels for work in spring. (Tr. 4122.) After treating with a spine specialist in August, having an injection, and obtaining imaging showing spinal abnormalities, Plaintiff was told to try physical therapy and other less aggressive therapies before considering surgery. (*Id.*) Plaintiff attended 17 physical therapy sessions with Ferlindes in November and December 2019. (Tr. 4079–4131.) By the final session on December 30, 2019, Ferlindes noted that Plaintiff had "made great progress in overall [range of motion] and strength" and no longer required skilled physical therapy at that time. (Tr. 4082.) Plaintiff reported feeling better than he had felt in

five years and was working around the house and bending, with his pain much more short-lived. (*Id.*) Plaintiff reported feeling ready to return to work. (*Id.*)

Plaintiff returned to physical therapy on May 27, 2020, at which time he reiterated that he felt good after completing physical therapy in December, had injections and radiofrequency ablations, and felt the constant pain decreased; however, "March, April, and May were fairly rough for the [low back]" and his doctor was recommending more injections and further physical therapy. (Tr. 4071.) After this second initial evaluation, Plaintiff attended four physical therapy sessions with Ferlindes between June and August 2020. (Tr. 4057, 4061, 4066, 4069.) On August 11, 2020, Plaintiff informed Ferlindes that despite continuing to have some back deficits, he preferred to cancel his appointments for now while he followed up with the doctor. (Tr. 4057.)

Plaintiff points to Ferlindes' initial evaluation during this second course of treatment, specifically, Ferlindes' statements in the assessment portion of the evaluation on May 27, 2020, that Plaintiff presented with associated deficits in core strength and lumbopelvic dissociation, lumbar range of motion, and glute/hip extension strength and that these deficits limited him from performing prolonged ambulation and standing, functional squatting and lifting tasks, rolling in bed, performing housework and yardwork, and returning to his prior exercise routine. (Tr. 4074.) Plaintiff argues this is a treating source opinion that the ALJ failed to evaluate or discuss. (Docket # 20 at 4.)

Plaintiff is incorrect. While he cites the applicable regulation defining a medical opinion in 20 C.F.R. § 404.1513(a)(2), he stops short at "a medical opinion is a statement from a medical source." (Docket # 14 at 16.) A "medical opinion" is not simply *any* statement from a medical source. The regulation's definition continues, stating a medical opinion is "a

9

statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching) . . . ." 20 C.F.R. § 404.1513(a)(2). In other words, a "medical opinion" is a medical source's statement regarding work-related capabilities and restrictions.

While Ferlindes mentions limitations in walking, standing, squatting, and lifting, the use of those words, in and of themselves, do not transform the statement into a medical opinion. "Assessments," such as the one found at the end of Plaintiff's May 27, 2020, record, appear at the end of many, if not most, medical records. The provider, however, is not opining what the patient can do (in terms of physical demands of work activities) despite his impairments, the provider is assessing the patient's current condition and then creating a plan of action for treatment. These types of assessments are better characterized as "other medical evidence" under § 404.1513(a)(3), which is described as evidence from a medical source that is not objective medical evidence or a medical opinion, "including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.*

While this type of "other medical evidence" should also be considered in evaluating disability, § 404.1520b, this evidence is not subject to the evaluation criteria articulated in § 404.1520c. And ALJ O'Grady did consider that Plaintiff underwent physical therapy and that while the records indicated ongoing flares of back pain, Plaintiff also reported significant levels of activity. (Tr. 20.) Thus, the ALJ did not err in this regard.

10

Case 2:24-cv-01383-NJ     Filed 12/08/25     Page 10 of 13     Document 21

### 2.2 Development of Record

Finally, Plaintiff argues the ALJ failed to fully develop the record. Specifically, Plaintiff states that he underwent a functional capacity evaluation in December 2020 and his treatment notes indicated that the results were available in an "ErgoScience" report. (Docket # 14 at 18, citing Tr. 2241.) Plaintiff argues, however, that the report itself was not made part of the record and because the ALJ should have been aware of the report based on reviewing the medical records, the ALJ erred by not obtaining it. (*Id.* at 18–19.) Plaintiff further argues that he testified at the hearing that he was undergoing an updated MRI but the ALJ never obtained that, either. (*Id.* at 19, citing Tr. 52.)

"While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). The duty is "enhanced" when a claimant is unrepresented, *id.*, however, it does not go away when the claimant is represented, *Gray v. Astrue*, No. 10 C 1670, 2011 WL 332540, at *5 (N.D. Ill. Jan. 28, 2011) ("This presumption does not, however, eliminate an ALJ's independent duty to reasonably develop the record."). Although having counsel does not absolve the ALJ of their duty to develop the record, "a claimant represented by counsel is presumed to have made his best case before the ALJ." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007); *see also Nicholson v. Astrue*, 341 F. App'x 248, 253 (7th Cir. 2009) ("Although we acknowledge that the ALJ bears some responsibility for the development of the record, at the same time the ALJ is entitled to assume that a claimant represented by counsel 'is making his strongest case for benefits.' An omission from the record is significant only if it is prejudicial to the claimant.") (internal citations omitted).

As to the MRI mentioned at the hearing, Plaintiff testified that he was having the MRI done on March 12, 2024. (Tr. 52.) Given the ALJ found Plaintiff disabled from August 14, 2023 through the date of the decision (May 9, 2024), it is unclear how the ALJ's failure to obtain this MRI record prejudiced the Plaintiff.

As to the ErgoScience report, Plaintiff was represented by counsel at the administrative hearing and when the ALJ asked counsel whether there were any additional records to be included in the file, the attorney responded that "all the records we've requested we have received." (Tr. 36.) ALJ O'Grady then stated that she "will consider the record to be complete," (Tr. 37), a statement counsel did not object to. While an ALJ retains *some* duty to develop the record when a claimant is represented, Plaintiff seeks to entirely shift the burden to the ALJ. Plaintiff argues the ALJ should have known about the record because it was cited in one of Plaintiff's progress noters. (Tr. 396–97.) But at the same time, Plaintiff was also aware of the evaluation as he underwent it. If he believed it was important to the ALJ's determination, counsel could have provided it.

Further, Plaintiff does not argue that omission of the record itself is prejudicial. He states that "the missing evidence was described in great detail in the medical record" (Docket # 20 at 7) and argues that Dr. Orton's medical opinion was based on this evaluation (Docket # 14 at 11–12). Thus, as the ALJ did review Dr. Orton's medical opinion, it seems this evidence was considered and properly rejected. The ALJ has not erred in the development of the record.

## CONCLUSION

Plaintiff argues the ALJ erred in her evaluation of his treating providers' opinions and in developing the record. I find that the ALJ's decision is supported by substantial evidence and affirm. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 8th day of December, 2025.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge